CAMERON M. McRAE AND WIFE, ALETA M. McRAE v. JERRY MOORE AND WIFE, JENNETTE MOORE

No. 7613DC751

(Filed 4 May 1977)

1. **Frauds, Statute of § 2; Boundaries § 10— contract to convey land — ambiguous description — admissibility of parol evidence**

When it is apparent upon the face of a written contract that there is uncertainty as to the land intended to be conveyed and the contract itself refers to nothing extrinsic by which the uncertainty can be resolved, the description is said to be patently ambiguous, parol evidence is not admissible to explain the ambiguity, and the contract is void; however, if the contract, although insufficient in itself to identify the property, refers to matters extrinsic by which identification might possibly be made, the description is said to be latently ambiguous, and evidence, parol and other, may be offered with reference to the extrinsic matter tending to identify the property.

2. **Boundaries § 10.2— contract to convey land — latently ambiguous description — parol evidence admissible**

A written option to purchase land was latently ambiguous and parol evidence was admissible to fit the description to the land where the option was insufficient in itself to identify the property which was the subject matter of the contract, but it did refer to matters extrinsic, i.e., the reference to a lot "presently occupied by Cameron M. and Aleta M. McRae as residence and real estate office," from which it might have been possible to identify the property with certainty.

McRae v. Moore

3. **Boundaries § 10— contract to convey land — latently ambiguous descriptions — insufficiency of parol evidence**

    In an action for specific performance of a latently ambiguous contract to convey land, parol evidence disclosed that there was no clearly identifiable lot with boundaries capable of being established with certainty "occupied by Cameron M. and wife Aleta M. McRae as residence and real estate office" as set forth in the contract; instead, all the evidence showed that the house occupied by the McRaes was located on a larger tract, of which only a portion was being sold, and the correct dividing line separating the portion to be sold from the portion to be retained was never established.

4. **Boundaries § 10.2— contract to convey land — latently ambiguous description — admissibility of parol evidence**

    In an action for specific performance of an option to purchase property, the trial court did not err in admitting defendants' evidence as to location of the property dividing line, since defendants' admission in their answer that they executed the option agreement did not eliminate an issue as to adequacy of the property description contained therein.

5. **Boundaries § 10.2— contract to convey land — latently ambiguous description — admissibility of parol evidence**

    In an action for specific performance of a contract to convey land, plaintiffs' contention that defendants' parol evidence was inadmissible because it altered an unambiguous written contract is without merit, since the description in the contract mentioned only two lines which could not by themselves enclose any lot; the description failed to state which line, if either, fronted on Causeway Road; and the unit of measure referred to, whether feet or yards or some other, was not stated.

6. **Rules of Civil Procedure § 15— "litigation by consent" — issue not raised by pleadings — litigation of issue proper**

    Where plaintiffs never objected to defendants' evidence on the specific ground that the evidence offered was not within the issues raised by the pleadings, under G.S. 1A-1, Rule 15(b), the rule of "litigation by consent" applied, and it was not error for the court to receive evidence and to decide the case on an issue not formally raised by the pleadings.

    APPEAL by plaintiffs from *Sauls, Judge*. Judgment entered 17 June 1976 in District Court, BRUNSWICK County. Heard in the Court of Appeals 16 February 1977.

    This is an action for specific performance of a contract to convey land. Plaintiffs alleged that the parties had entered into an option agreement, a copy of which was attached to the complaint; that plaintiffs had notified defendants they were exercising the option and had tendered the full purchase price;

and that defendants had refused to convey. The land was described in the option agreement as follows:

"Rt #1 Box 379-A Causeway Rd. Brunswick Cty. Supply, N.C. approximately 105 x 208.7 lot size presently occupied by Cameron M. & wife Aleta M. McRae as residence and real estate office."

The option included a provision imposing the obligation on "Seller to install deep well and water pump."

Defendants admitted the option but denied they had refused to perform under its terms. The answer also stated two counterclaims not relevant to this appeal. The case was tried without a jury.

The plaintiffs offered evidence to show: The property described in the option is located on Highway 130, the causeway to Holden Beach. At that location defendants own a tract almost an acre in size on which there are two houses. Plaintiffs rent the house on the southern portion of the tract and occupy it as their residence and as a real estate office. The other house is occupied by Mr. and Mrs. Davis, the parents of the defendant, Jeannette Moore. The Davis house is some 28 to 30 feet north of the house in which plaintiffs live, and there is a driveway between the yards. One well serves both houses. After the option was signed, the defendants sent a surveyor to the property. He at first surveyed a lot 105 feet wide. When this survey was completed and a plat was prepared, the defendant, Jerry Moore, met with the plaintiff, Cameron McRae, and said that he made a mistake and that he didn't realize the 105 foot line would go as close to the Davis house as it did. A new survey was made and a plat was prepared showing a lot fronting 94.68 feet on Highway 130, with the south side line being 197.22 feet in length, the north side line being 191.65 feet in length, and the back property line being 69.16 feet in length. Defendants offered to convey this lot to plaintiffs, but plaintiffs refused to accept. Plaintiffs notified defendants they were exercising the option, but defendants refused to convey. Plaintiffs never actually tendered the full purchase price to defendant, but they were ready to do so as soon as defendants tendered a deed conveying the property described in the option.

The defendants offered evidence to show: Prior to signing the option the defendant, Jerry Moore, and the plaintiff, Cam-

eron McRae, did not go upon the ground, but they did discuss where the line would be upon the ground. Mr. Moore told Mr. McRae he would sell approximately 10 feet on the north side of the house being sold to give him room to drive his car in, but that he would not sell him the existing well which served the Davis house. This was the reason for the provision in the option requiring the seller to install a well. When the surveyor surveyed the 105 foot wide lot, it was found it would include the existing well. Mr. McRae and Mr. Moore had guessed at the frontage of the lot along the road and guessed it to be around 100 to 105 feet. However, the parties intended the lot being sold to plaintiffs to extend about 10 feet north of the house which is located on that lot, and they did not intend that the lot contain the existing well. The deed which defendants prepared from the second survey and which they offered to plaintiffs conforms to that understanding.

The court entered judgment making detailed findings of fact, including the following:

"2. That as a special condition of this option agreement, the Defendants were to install a deep well and water pump on the portion of his property which is the subject of the option agreement.

3. That the parties understood prior to entering into the option agreement that the existing well and water pump on the Defendant's property was to be retained by the Defendants and was not to be included in the tract to be conveyed to the Plaintiffs; further, the Defendants understood that the northern boundary line between the property to be conveyed by him and the property to be retained by him would be approximately 10 feet north of the existing house on the property to be conveyed which is occupied by the Plaintiffs as lessees.

4. That the existing well and water pump presently serves a residence occupied by the Plaintiffs as lessees which is included in the property description in the option agreement as well as a separate residence occupied by Harry S. Davis and wife, Annie L. Davis, which is located on that portion of the property which was to be retained by the Defendants.

5. That on or about 9 June, 1975, Jan K. Dale, Registered Land Surveyor, came upon the property of Defend-

ants at Defendants' request and to perform a survey for the purpose of establishing a boundary line between the tract Plaintiffs were interested in buying under the option agreement and the tract to be retained by Defendants. The Defendants were absent at the time the survey was made, and the western boundary line of the tract in question was set as being 105 feet in length from the southwestern corner of said tract; this length was based on the description contained in the option (a copy of which was available to Jan K. Dale), and also based on information furnished to Jan K. Dale by the Plaintiff, Cameron M. McRae, at the time of the survey.

6. That when Defendants returned home and learned of locations of the surveyor's stakes on the property, he immediately informed the Plaintiffs and the surveyor, Jan K. Dale, that the line dividing the property to be conveyed to Plaintiffs and the property to be retained by Defendants was surveyed on the grounds at the wrong place and further informed the surveyor that he would have to re-survey the property.

7. That by setting the western boundary line of the property in question as being 105 feet in length, the existing well and water pump would be located on the property to be conveyed to Plaintiffs.

8. That the defendant, Jerry Moore, had the property re-surveyed by Jan K. Dale so as to place the dividing line between the property to be conveyed and that to be retained by him (the northern boundary line of the property to be conveyed) 10 feet north of the house on the property to be conveyed and in such a manner as to locate the well on the property to be retained by him; this re-survey resulted in the western boundary line being 94.68 feet rather than exactly 105 feet in length."

Based on its findings of fact, the court concluded as a matter of law that due to a mutual misunderstanding as to the actual location of the northern boundary line, there was never any meeting of the minds of the parties as to the description of the property and therefore the option was void. From judgment for defendants in accord with this conclusion, plaintiffs appeal.

*Powell and Smith by William A. Powell for plaintiff appellants.*

*Mason H. Anderson by Douglas W. Baxley for defendant appellees.*

PARKER, Judge.

[1]   A contract to convey land "must contain a description of the land, the subject matter of the contract, either certain in itself or capable of being reduced to certainty by reference to something extrinsic to which the contract refers." *Lane v. Coe,* 262 N.C. 8, 12, 136 S.E. 2d 269, 273 (1964). When it is apparent upon the face of the written contract that there is uncertainty as to the land intended to be conveyed and the contract, itself, refers to nothing extrinsic by which the uncertainty can be resolved, the description is said to be patently ambiguous. "Parol evidence may not be introduced to remove a patent ambiguity since to do so would not be a use of such evidence to fit the description to the land but a use of such evidence to create a description by adding to the words of the instrument." *Overton v. Boyce,* 289 N.C. 291, 294, 221 S.E. 2d 347, 349 (1976). In such a case the contract is void. If, however, the contract, although insufficient in itself to identify the property, refers to matters extrinsic by which identification might possibly be made, the description is said to be latently ambiguous. When that is the case, evidence may be offered, parol and other, with reference to the extrinsic matter tending to identify the property. *Lane v. Coe, supra.*

[2, 3]   The description in the written option in the present case is insufficient in itself to identify the property which is the subject matter of the contract. It does, however, refer to matters extrinsic, i.e., the reference to a lot "presently occupied by Cameron M. and wife Aleta M. McRae as residence and real estate office," from which it might have been possible to identify the property with certainty. It was, therefore, not patently but only latently ambiguous, and parol evidence was admissible to fit the description to the land. When this was attempted, however, the difficulty which plaintiffs encountered was that the evidence, both that introduced by plaintiffs and by defendants, disclosed that there was no clearly identifiable lot with boundaries capable of being established with certainty "occupied by Cameron M. & wife Aleta M. McRae as residence and real estate

office." Instead, all of the evidence showed that the house occupied by the McRaes was located on a larger tract, of which a portion only was being sold, and the correct location of the dividing line separating the portion to be sold from the portion to be retained was never established. Plaintiffs thought the line was to be fixed so as to give them a lot fronting 105 feet on the highway and having a rear lot line also 105 feet in length, but the written option contract did not say this and the parol evidence failed to establish that this was the lot "presently occupied" by the plaintiffs. Defendants thought the line was to be fixed so as to run approximately 10 feet north of the house occupied by the McRaes and so as to leave the existing well on the portion of the lot to be retained, but the written option contract did not say this either nor did the parol evidence show this to be the lot "presently occupied" by plaintiffs. Thus, the evidence failed to dispel the latent ambiguity in the description contained in the written option agreement. The detailed findings of fact made by the trial judge were supported by the evidence, and his findings of fact in turn support his conclusion that there was never a meeting of the minds of the parties as to the location of the new dividing line. Accordingly, the contract was void and unenforceable.

[4] Plaintiffs assign error to the court's overruling their objections to the evidence presented by defendants which tended to show defendants' version of the dividing line as being approximately 10 feet north of the house occupied by plaintiffs and as being so located as to leave the existing well on the portion of defendants' property which was not being conveyed. In their brief, plaintiffs present three arguments in support of their contention that the court erred in admitting this evidence. First, plaintiffs point out that defendants filed answer in which they admitted execution of the option agreement. Citing *Burkhead v. Farrow*, 266 N.C. 595, 146 S.E. 2d 802 (1966), plaintiffs contend no issue as to adequacy of the description of the land to be conveyed was raised by the pleadings. We do not agree. In *Burkhead v. Farrow, supra,* defendants admitted in their further answer that they executed an option to plaintiff to purchase the lands *described in the complaint,* and the complaint in that case contained a metes and bounds description of the property. Here, plaintiffs' complaint contains no description of the property other than that contained in the written option agreement which was attached to and made a part of the complaint. Defendants'

admission of executing the option agreement did not eliminate an issue as to adequacy of the property description contained therein.

[5]   As their second contention, plaintiffs contend that defendants' parol evidence was inadmissible because it altered an unambiguous written contract. The simple answer is that the writing was far from unambiguous. The description, "approximately 105 x 208.7 lot size," mentions only two lines, which cannot by themselves enclose any lot. It fails to state which line, if either, fronts on Causeway Road. The unit of measure referred to, whether feet, yards, or some other, is not stated.

[6]   Finally, plaintiffs point out that defendants failed to allege mutual mistake as a defense and that for this reason it was error to admit defendants' parol evidence and to grant relief on a defense that was not alleged. However, the record discloses that plaintiffs never objected to defendants' evidence on the specific grounds that the evidence offered was not within the issues raised by the pleadings. Therefore, under G.S. 1A-1, Rule 15(b), the rule of "litigation by consent" applied, and it was not error for the court to receive evidence and to decide the case on an issue not formally raised by the pleadings. *Mangum v. Surles*, 281 N.C. 91, 187 S.E. 2d 697 (1972) ; *Roberts v. Memorial Park*, 281 N.C. 48, 187 S.E. 2d 721 (1972).

Plaintiffs' final assignment of error brought forward in their brief is directed to the court's second conclusion of law, in which the court found that the option agreement expired because plaintiffs failed to tender payment within the time required by the agreement. We need not consider this assignment of error, because the judgment appealed from was fully supported by the court's first conclusion that the option was void for the reason that there was never any meeting of the minds of the parties as to the description of the property to be conveyed.

The judgment appealed from is

Affirmed.

Chief Judge BROCK and Judge ARNOLD concur.